[Civ. No. 6300. First Appellate District, Division Two.—August 29, 1928.]

MIDSTATE OIL COMPANY (a Corporation), Respondent, v. OCEAN SHORE RAILROAD COMPANY (a Corporation) et al., Appellants.

Fred L. Dreher and Ross & Ross for Appellants.

Thomas R. White and Charles W. White for Respondent.

WARNE, P. J., *pro tem.*—This is an appeal from a judgment quieting plaintiff's title to a strip of land sixty feet in width and running on a curve for approximately a mile through a tract of land owned by the respondent. Said strip of land was formerly a part of said tract of land. The lands are situate in San Mateo County and said strip of land was formerly used by appellant for a roadbed for its railroad. Both the appellant and the respondent claim title in fee simple to the property under mesne conveyances from Henry J. F. Butts, Herman F. J. Butts, and Annie S. K. Butts.

The cause was submitted to the trial court upon an agreed statement of facts which are substantially as follows: In May, 1905, the Ocean Shore Railway Company was incorporated to build and operate a railroad from Army Street in San Francisco to the city of Santa Cruz, along the shore line of the Pacific Ocean. By its articles of incorporation it was empowered to acquire such real estate as it might need. Thereafter on November 15, 1906, Henry J. F. Butts, Herman F. J. Butts, and Annie S. K. Butts, then the owners in fee simple of the lands in controversy, executed and delivered to the Ocean Shore Railway Company, for a valuable and substantial consideration, a grant, bargain, and sale deed to said strip of land.

The recitals and words of conveyance in said deed are as follows: "That the said party of the first part, for and in consideration of the sum of ten dollars ($10.00), gold coin of the United States of America, to them in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, have granted, bargained and sold, conveyed and confirmed, and by these presents do grant, bargain and sell, convey and confirm, unto the said party of

the second part, and to its successors and assigns forever, all that certain lot, piece or parcel of land, situate, lying and being in the County of San Mateo, State of California, and bounded and particularly described as follows, to-wit: A strip of ground sixty feet in width through property of Henry J. F. Butts, Herman F. J. Butts, and Annie S. K. Butts, situate in the County of San Mateo, State of California; bounded on the north and south by property of Henry Cowell; said right of way being bounded by the northerly and southerly boundaries of said property of Henry J. F. Butts, Herman F. J. Butts and Annie Butts, and by lines drawn parallel to and twenty-four (24) feet on the westerly and thirty-six (36) feet on the easterly side of a line described as follows: . . . To have and to hold, all and singular the said premises, together with the appurtenances, unto the said party of the second part, and to its successors and assigns forever.''

Thereafter, during the month of October, 1911, the Ocean Shore Railway Company, for a valuable and substantial consideration, conveyed to the Ocean Shore Railroad Company, a corporation, all its ''right, title and interest'' in and to the land involved. The Ocean Shore Railroad Company has been organized to take over the property and privileges of the Ocean Shore Railway Company and was duly authorized to acquire such property and privileges and to own and hold real property in San Mateo County. Soon after the conveyances from Henry J. F. Butts et al. to the Ocean Shore Railway Company, the company constructed a railroad over the strip of land, and thereafter the Ocean Shore Railway Company and its successor, the Ocean Shore Railroad Company, operated the railroad until February, 1921. The operation of the railroad, however, did not yield income sufficient to pay the expenses of maintaining and operating it and the Railroad Commission of the state of California so determined, in proceedings duly had and taken before it, and on October 9, 1920, authorized the Ocean Shore Railroad Company to discontinue its service as a common carrier on the railroad. And the Railroad Commission, in so far as authority was necessary, authorized the Ocean Shore Railroad Company to dismantle and dispose of its property. In February, 1921, the railroad company discontinued its operations, and on May 28, 1924, for a

valuable and substantial consideration said Ocean Shore Railroad Company, in good faith, made, executed, and delivered to the defendants Giovanni Pera and Frank B. Russi a deed of all its "right, title, and interest" in and to the lands in question.

From the agreed statement of facts the trial court found in part that on November 15, 1906, Henry J. F. Butts, Herman F. J. Butts, and Annie S. K. Butts conveyed the strip of land in question to the Ocean Shore Railway Company "only for a right-of-way for its railroad"; that the respondent is the successor in interest of Henry J. F. Butts et al., that pursuant to the permit issued to it by the Railroad Commission the railroad company ceased operating the railroad, removed the railroad tracks and other equipment from the strip of land, and discontinued permanently its service as a common carrier on the railroad and abandoned the use of the strip of land for any and every railroad purpose and has ever since continued to abandon the land for railroad purposes; that the appellant railroad company on May 28, 1924, conveyed by quitclaim deed any interest it then had in said strip of land to the appellants Pera and Russi. The trial court concluded as a matter of law that respondent is the owner in fee simple of the land in question and that appellants have no estate, right, title, claim, or interest in or to said lands.

It is contended by appellants that the deed from Henry J. F. Butts et al. to the Ocean Shore Railway Company conveyed title in fee simple absolute and that where a railroad company takes title·in fee it does not revert to the original grantors or their successors on abandonment or nonuser by the railroad company.

Title in fee simple to land may vest in a railroad company (*Behlow* v. *Southern Pacific R. R Co.*, 130 Cal. 16 [62 Pac. 295]; *Hannah* v. *Southern Pacific R. R. Co.*, 48 Cal. App. 517 [192 Pac. 304]; *Palmer* v. *Los Angeles etc. Ry. Co.*, 55 Cal. App. 519 [203 Pac. 1012]). And in the case of *City of Oakland* v. *Schenck*, 197 Cal. 456 [241 Pac. 545], Mr. Justice Waste, speaking for the court, said: "In Illinois, a railroad company can acquire land, whether by voluntary purchase or otherwise, for railroad purposes as defined in its charter. It does not hold land, as does the ordinary owner, with the right to use it for any purpose to

which it may be adapted. . . . In this state there is no such restriction on the right of a railroad company. It may acquire the fee in land by a direct purchase; although it may obtain only an easement for railroad purposes, if it resort to proceeding in eminent domain.''

The deed from Henry J. F. Butts et al. to the Ocean Shore Railway Company must be measured by its own terms. There is nothing in the deed which in any way limited the company in the use that it might make of the land. The fact that the deed makes use of the words ''right of way'' in one of its calls in the description does not limit the use to which the lands may be put. We must hold that the deed conveyed the fee. Such being the case, did the railroad company lose its fee to the lands by nonuser or abandonment? The question is one of first impression in this state.

In 33 Cyc., at page 221, the general rule concerning loss of lands or right by a railroad company by reason of forfeiture or abandonment is stated as follows: ''A railroad company's easement in its right of way or other land may be lost by abandonment or surrendered (citing *McLemore* v. *Charleston etc. R. Co.*, 111 Tenn. 639 [69 S. W. 338]), but where the land is conveyed to the railroad company in fee its title thereto is not lost by nonuser or abandonment (citing *Watkins* v. *Iowa Cent. R. Co.*, 123 Iowa, 390 [98 N. W. 910]; *Enfield Mfg. Co.* v. *Ward*, 190 Mass. 314 [76 N. E. 1053]).'' To the same effect are the following cases: *Carr* v. *Miller*, 105 Neb. 623 [181 N. W. 557]; *Spierling* v. *Ohl*, 232 Ill. 581 [13 Ann. Cas. 430, 83 N. E. 1068]; *Concklin* v. *New York Central & H. R. R. Co.*, 149 App. Div. 739 [134 N. Y. Supp. 191]; *Kynerd* v. *Hulen*, 5 Fed. (2d ed.) 160; *New York, Bridgeport & E. Ry. Co.* v. *Motil*, 81 Conn. 466 [71 Atl. 563]; *Chamberlain* v. *Northeastern R. R. Co.*, 41 S. C. 399 [44 Am. St. Rep. 717, 25 L. R. A. 139, 19 S. E. 743]; *Page* v. *Heineberg*, 40 Vt. 81, 94 Am. Dec. 378].

As opposed to this rule respondent relies principally on the case of *Abercrombie* v. *Simmons*, 71 Kan. 538 [114 Am. St. Rep. 509, 1 L. R. A. (N. S.) 806, and note, 81 Pac. 208]. In that case the court in holding a railroad company takes a mere easement, and not a title in fee, under a deed conveying to it land for purposes of right of way, and that the title reverts to the grantor upon the abandonment of the

road, even though the deed contains covenants of warranty, confined its decision to cases where the contract of conveyance shows that it "was sold and received for use as a right of way" and did not pass upon the power generally of railroads to purchase land in fee. The decision as thus restricted is supported by the authorities. There is nothing in the deed, in the case at bar, however, showing that the land was "sold and received for use as a right of way."

Respondents say that it bases its right to prevail in this action upon sections 465 and 468 of the Civil Code of California, relating to the powers of railroad companies. Respondent argues that under section 465 of the Civil Code a railroad company cannot acquire a fee in land acquired for a right of way, although the deed may be absolute in form, and upon abandonment of the land so conveyed for right of way purposes it reverts to the original owners or their successors in interest. We have already pointed out that a railroad company may acquire the fee to lands by direct purchase and we cannot construe section 465 of the Civil Code, when read as a whole, so as to change the rule when the land is acquired for right of way purposes. Subdivision 7 of the section specifically provides that railroad companies have "power to purchase lands, timber, stone, gravel or other materials to be used in the construction and maintenance of its road, and all necessary appendages and adjuncts, or acquire them in the manner provided in title 7, part 3, Code of Civil Procedure, for the condemnation of lands. . . . " And section 354 of the Civil Code provides that "every corporation, as such, has power . . . to purchase, hold, and convey such real and personal estate as the purpose of the corporation may require, not exceeding the amount limited in this part."

Section 468 of the Civil Code provides that "after the completion of any railroad, or any part thereof, capable of being operated, its owner must operate it, and upon his failure to keep it, or any part thereof, in full operation for the period of six months, his right to operate it in whole or in part, as the case may be, is forfeited, and the land occupied for the purposes of the road, so far as the same is not operated, revert to the original owners or their successors in interest. . . . This section must not be construed

to require operation of the road . . . when the operation of the road together with its branch and trunk lines, does not yield income sufficient to defray the expenses of maintaining and operating it in connection with its branch and trunk lines. The railroad commission of California has the power to examine and determine whether a railroad, together with its branch and trunk lines, yields income sufficient to operate the same.'' There could be no forfeiture of the railroad company's right to its franchise in the case at bar for the reason that the Railroad Commission of California expressly authorized the Ocean Shore Railroad Company to terminate its service as a common carrier and likewise we do not think there was a forfeiture of the right to the lands by the railroad company under this section. Assuming that there could be a forfeiture by virtue of this section it would not apply in this case because the Ocean Shore Railroad Company brought itself within the exception. ''Forfeitures are not favored in law, and conditions providing for the forfeiture of an estate are to be construed liberally in favor of the holder of the estate and strictly against the enforcement of the forfeiture.'' (*Hannah* v. *Southern Pacific R. R. Co.*, 48 Cal. App. 521 [192 Pac. 306].) ''Statutes and contracts are construed strictly against forfeitures or as liberally as possible to prevent them. A statute declaring a forfeiture is not to be extended beyond its direct meaning by implication, unless such implication is imperatively necessary by reason of the subject matter or terms of the statute.'' (12 Cal. Jur., p. 634.)

■ We are also of the opinion that the respondent is estopped to deny the power of the Ocean Shore Railway Company to receive the title purported to be conveyed by Henry J. F. Butts et al. ■ The general rule is that a grantor is estopped by his deed to question the power of his grantee to take fee-simple title. And the case of *Palmer* v. *Los Angeles etc. Ry. Co.*, 55 Cal. App. 519 [203 Pac. 1012] is authority for the proposition that one who conveys to a railroad company by grant deed, for the purposes of a roadbed, cannot thereafter deny the power of the railroad company to receive the title in fee.

We are of the opinion that the trial court was in error in concluding that the respondent is the owner in fee simple

of the land in question and that the defendants "have no estate, right, title, claim or interest in or to said lands."

The motion for a new trial should have been granted.

The judgment is reversed.

Sturtevant, J., and Nourse, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on September 26, 1928, and a petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 25, 1928.

All the Justices present concurred.